UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TOMMY L. SIMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-23-1022-G |
| ) | |
| STATE FARM MUTUAL ) | |
| AUTOMOBILE INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Now before the Court is Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment (Doc. No. 36). Plaintiff Tommy L. Sims has filed a Response to Defendant's Motion (Doc. No. 40), to which Defendant has replied (Doc. No. 43).

I.  *Standard of Review*

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Id.*

Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

"When the moving party does not have the ultimate burden of persuasion at trial, it has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). The movant can satisfy its initial burden by producing "affirmative evidence negating an essential element of the non-moving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Id.* (internal quotation marks omitted). If the movant carries this initial burden, the nonmovant must then "go beyond the pleadings and designate

specific facts" that would be admissible in evidence in the event of trial "so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (internal quotation marks omitted); *see* Fed. R. Civ. P. 56(c)(1)(A).

## II.  *Defendant's Facts Are Deemed Admitted*

Defendant's Motion provides a "Statement of Undisputed Material Facts" (or "UMF"). *See* Def.'s Mot. Summ. J. at 9-15. The Court's Local Civil Rule 56.1 requires that the "brief in opposition to a motion for summary judgment . . . begin with a section responding, *by correspondingly numbered paragraph*, to the facts that the movant contends are not in dispute" and "state any fact that is disputed." LCvR 56.1(c). In his Response, Plaintiff does not address the merits of Defendant's Motion or specifically question whether any fact presented by Defendant as undisputed is so.[1] Because Plaintiff has not disputed any of the facts set forth in Defendant's Motion, those facts are deemed admitted for purposes of considering the Motion, to the extent they are supported by the record before the Court. *See id.* R. 56.1(e); *Davis v. Simon Prop. Grp.*, 9 F. App'x 876, 880-81 (10th Cir. 2001).

---

[1] Plaintiff filed a response but argued only that entry of summary judgment would be premature given Plaintiff's then-pending request that the case be remanded. *See* Pl.'s Resp. at 1-2. The Court denied Plaintiff's remand request on March 7, 2025. *See* Order (Doc. No. 47). Plaintiff has not sought leave to supplement or amend his summary-judgment response since that date.

### III.     Relevant Facts

Plaintiff, an Oklahoma citizen, purchased a vehicle on May 24, 2023, for $72,701. Def.'s UMF ¶¶ 9-10; Def.'s Mot. Ex. 3 (Doc. No. 36-3) at 1.  Shortly thereafter, Defendant (or "State Farm"), an Illinois corporation, issued an insurance policy (the "Policy") to Plaintiff, insuring Plaintiff's new vehicle.  Def.'s UMF ¶ 1; Def.'s Mot. Ex. 1 (Doc. No. 36-1) at 2; *see also* Am. Compl. (Doc. No. 39) ¶ 2; Def.'s Discl. (Doc. No. 7) at 1.

On June 19, 2023, Plaintiff, via his insurance sales agent, reported a claim for hail damage sustained to his vehicle.  Def.'s UMF ¶ 8; Def.'s Mot. Ex. 2 (Doc. No. 36-2) at 41. The next day, a State Farm representative inspected Plaintiff's vehicle and identified it as a "Probable Total Loss."  Def.'s UMF ¶ 12; Def.'s Mot. Ex. 2, at 39-40; Am. Compl. ¶ 5. During that inspection, State Farm advised Plaintiff that a transferrable Oklahoma title was needed to complete any total loss settlement.  *See* Def.'s UMF ¶ 13; Def.'s Mot. Ex. 2, at 40.

On June 21, 2023, State Farm obtained a market valuation report from CCC One, which indicated that the vehicle's pre-loss value was $65,392.  Def.'s UMF ¶ 14; Def.'s Mot. Ex. 4 (Doc. No. 36-4) at 1.  On June 30, 2023, State Farm sent Plaintiff a letter regarding State Farm's determination.  Def.'s Mot. ¶ 17; Def.'s Mot. Ex. 2, at 34.  State Farm continued to advise Plaintiff that State Farm needed title documentation to remit payment to him.  Def.'s UMF ¶¶ 16, 18; Def.'s Mot. Ex. 2, at 31-33, 35.

On July 12, 2023, Plaintiff demanded payment from State Farm.  Def.'s UMF ¶ 20; Def.'s Mot. Ex. 2, at 30.  That same day, State Farm again advised Plaintiff that it needed

4

title paperwork before payment could be made.  Def.'s UMF ¶ 20; Def.'s Mot. Ex. 2, at 29-30.

On July 20, 2023, Plaintiff confirmed that he had not yet sent State Farm a certificate of title for the vehicle.  Def.'s UMF ¶ 22; Def.'s Mot. Ex. 2, at 28.  Additionally, Plaintiff requested payment for storage and rental fees and that certain add-ons to his vehicle be included in the valuation of Plaintiff's total loss.  Def.'s UMF ¶ 22; Def.'s Mot. Ex. 2, 28.  The valuation report, however, already accounted for these add-on options.  Def.'s UMF ¶ 23; Def.'s Mot. Ex. 4, at 5-6.

On July 24, 2023, State Farm obtained records directly from the State of Oklahoma confirming Plaintiff's ownership of and title to the vehicle and contacted the vehicle's lienholder, BancFirst, for instructions on paying off the lien as part of the settlement of the insurance claim.  Def.'s UMF ¶¶ 24, 25; Def.'s Mot. Ex. 2, at 26.  State Farm also received a second market valuation report from CCC One, indicating the pre-loss value of the vehicle was $65,442.  Def.'s UMF ¶ 26; Def.'s Mot. Ex. 5 (Doc. No. 36-5) at 1.[2]

State Farm determined that the actual cash value of Plaintiff's vehicle was $68,355.89, an amount higher than that stated in both of the CCC One market valuation reports.  Def.'s UMF ¶ 27; Def.'s Mot. Ex. 7 (Doc. No. 36-7) at 1.  State Farm further determined that estimated taxes and the title transfer fee totaled $2927.15, amounting to a

---

[2] The second market valuation report, like the first report, accounted for add-ons to the vehicle.  Def.'s Mot. Ex. 5, at 5-6.

5

total pre-deductible loss amount of $71,283.04.  Def.'s UMF ¶ 27; Def.'s Mot. Ex. 7, at 1.[3] Accordingly, on July 25, 2023, State Farm sent BancFirst a check for $48,756.23.  Def.'s UMF ¶ 27; Def.'s Mot. Ex. 6 (Doc. No. 36-6) at 1.  Additionally, State Farm sent Plaintiff a letter explaining State Farm's calculation of the total loss settlement and informing Plaintiff that he would be paid $22,026.81—the net payable after accounting for State Farm's payment to BancFirst and Plaintiff's $500 deductible.  Def.'s UMF ¶ 27; Def.'s Mot. Ex. 7, at 1.

On July 28, 2023, State Farm was informed that Plaintiff's vehicle was being stored at Plaintiff's office and had "For Sale" marked on its windshield.  Def.'s UMF ¶¶ 29, 30; Def.'s Mot. Ex. 2, at 20.  Accordingly, State Farm stopped payment on the settlement check until it could ensure the vehicle remained available to State Farm, as required by the Policy. Def.'s UMF ¶ 30.  On August 3, 2023, Plaintiff's insurance sales agent advised State Farm that the vehicle had been delivered to his office, and State Farm released the check to Plaintiff for payment.  Def.'s UMF ¶ 31; Def.'s Mot. Ex. 2, at 16-18.  On August 9, 2023, Plaintiff's insurance sales agent advised State Farm that the payment was not clearing, and State Farm sent a replacement check overnight directly to Plaintiff's bank.  Def.'s UMF ¶ 32; Def.'s Mot. Ex. 2, at 15-16.

On August 22, 2023, Plaintiff's insurance sales agent informed State Farm that Plaintiff was seeking an additional $45,000 from State Farm for rental fees, storage fees, bank fees, and vehicle add-ons, which Plaintiff alleged were missing from State Farm's

---

[3] The Policy included a $500 deductible for comprehensive coverage.  Def.'s Mot. Ex. 1, at 2.

determination of Plaintiff's total loss. Def.'s UMF ¶ 33; Def.'s Mot. Ex. 2, at 14. State Farm determined that Plaintiff never rented an alternative vehicle during the period he was unable to operate the damaged vehicle, never incurred storage fees for the vehicle, and never submitted information to State Farm regarding such costs. Def.'s UMF ¶¶ 36-37; Def.'s Mot. Ex. 2, at 28.

State Farm explained to the insurance sales agent that it did not owe any payment for these fees and that the add-ons already had been accounted for in State Farm's valuation for the vehicle. Def.'s UMF ¶¶ 36-37; Def.'s Mot. Ex. 2, at 28. On September 28, 2023, State Farm sent Plaintiff a letter explaining that he could invoke the Policy's appraisal provision if he was not satisfied with State Farm's valuation. Def.'s UMF ¶ 34; Def.'s Mot. Ex. 10 (Doc. No. 36-10) at 1-2. Rather than invoking the appraisal process, Plaintiff filed suit. Def.'s UMF ¶ 35.

IV.    *Discussion*

In this diversity action, Plaintiff alleges that Defendant "has breached its contractual obligations under the terms and conditions of the insurance contracts . . . by failing to pay . . . Plaintiff all benefits to which he is entitled under the terms and conditions" of the Policy. Am. Compl. at 1. Defendant contends that it properly paid Plaintiff "the actual cash value of the covered vehicle minus any applicable deductible." Def.'s Mot. Summ. J. at 6 (internal quotation marks omitted).

To prevail on the claim for breach of contract under Oklahoma law, Plaintiff must prove: "(1) formation of a contract; (2) breach of the contract; and (3) damages as a result of that breach." *Morgan v. State Farm Mut. Auto. Ins. Co.*, 488 P.3d 743, 748 (Okla. 2021).

"A breach of contract is a material failure of performance of a duty arising under or imposed by agreement." *Lewis v. Farmers Ins. Co.*, 681 P.2d 67, 69 (Okla. 1983).

Pursuant to the Policy, when a vehicle has sustained covered damages sufficient to warrant a total loss settlement, State Farm will "[p]ay the actual cash value of the covered vehicle minus any applicable deductible." Def.'s Mot. Ex. 1, at 23 (emphasis omitted). The evidence in the record reflects no genuine dispute as to whether Defendant paid this sum. *See* Def.'s UMF ¶¶ 2, 6, 27-32. Specifically, Plaintiff has not shown any genuine dispute as to the fact or amount of payment.

Nor has Plaintiff shown that Defendant breached its obligation to pay Plaintiff for any other covered loss. As to rental and storage fees incurred during the pendency of the claim, Defendant acknowledges that it is obligated to pay such costs to the extent described in the Policy's terms and conditions, including the express condition that rental and storage fees are only compensable when actually incurred. *See* Def.'s Mot. Ex. 1, at 37. Defendant has presented evidence reflecting that Plaintiff did not incur any such storage or rental fees. *See* Def.'s UMF ¶¶ 33, 36-37. Plaintiff has not pointed the Court to any admissible evidentiary material establishing a genuine dispute regarding whether Plaintiff actually incurred any rental or storage fees.

As to the other suggested items of loss, including bank fees and after-market add-ons to the vehicle, Defendant has properly challenged Plaintiff's ability to produce admissible evidence of covered but unpaid (or underpaid) losses. *See* Fed. R. Civ. P. 56(c)(1)(B). Plaintiff has not provided any admissible evidence showing a covered loss was not fully paid.

For all these reasons, a trier of fact could not reasonably find that Defendant materially failed to perform a duty under the Policy. *See Morgan*, 488 P.3d at 748; *Lewis*, 681 P.2d at 69. Defendant is therefore entitled to judgment as a matter of law on Plaintiff's claim for breach of contract. *See* Fed. R. Civ. P. 56(a).

## CONCLUSION

As outlined above, Defendant's Motion for Summary Judgment (Doc. No. 36) is GRANTED. A separate judgment shall be entered.

The pending motions (Doc. Nos. 49, 55, 56, 57, 59, 63, 64) are DENIED AS MOOT.

IT IS SO ORDERED this 20th day of June, 2025.

_____
CHARLES B. GOODWIN
United States District Judge